### BROOKS *v.* FLINT FURNITURE MART.

MASTER AND SERVANT—TERMINATION OF EMPLOYMENT—CLEAR PRE-
PONDERANCE OF EVIDENCE.

Finding of trial court in nonjury case that plaintiff was dis-
charged *held*, against the clear preponderance· of the evidence
in action for breach of written year's contract of employment
as manager of floor covering department of defendant store.

Appeal from Genesee; Gadola (Paul V.), J. Sub-
mitted April 6, 1955. (Docket No. 29, Calendar No.
46,438.) Decided June 6, 1955.

Case by Russell V. Brooks against Flint Furniture
Mart, a Michigan corporation, for damages arising
from alleged breach of employment contract. Judg-
ment for plaintiff. Defendant appeals. Reversed
and remanded.

*John W. Richardson,* for plaintiff.

*Herman F. Lande (Walter P. Kuta,* of counsel),
for defendant.

REID, J. Plaintiff Brooks brought this action on
an employment contract, claiming a breach of the
contract and unlawful termination of the contract
by the defendant. Defendant appeals from a judg-
ment against defendant for $2,813.23. Under an em-
ployment contract dated March 9, 1948, defendant

REFERENCES FOR POINTS IN HEADNOTES
35 Am Jur, Master and Servant § 59.

employed the plaintiff for a period of 1 year from and after March 8, 1948, for the sum of $7,800 per year, payable at the rate of $150 per week. Section 2 of the contract is as follows:

"The services to be performed by the employee shall be that of manager of the floor covering department with duties consisting of buying and selling floor covering. It is further understood and agreed by and between the parties hereto that the employee will help the employer in other selling departments when free to do so, or on the request of the employer. It is further understood and agreed by and between the parties hereto that the employee will draw plans for remodeling the floor covering department of the employer at no extra salary or remuneration from the employer."

Section 5 of the contract is as follows:

"5. It is understood and agreed by and between the parties hereto that this contract can only be terminated by the employer by payment of the entire balance of the yearly salary due and owing to the employee. That the contract otherwise shall not be terminated except in the case of proven dishonesty on the part of the employee."

The case was tried without a jury. The issue is factual. Plaintiff claims that defendant's business manager discharged plaintiff without any reason recognizable as such under the contract. Defendant denies discharging plaintiff, and claims plaintiff quit the employment of his own volition.

On or about August 13 or 15, 1948, a loud conversation took place in a small office in the store of defendant between plaintiff and Mr. Sam Lande, defendant's manager.

Plaintiff claims that in the conversation Mr. Lande expressed himself as dissatisfied with the results in plaintiff's department, floor covering, and plaintiff

claims that Mr. Lande told him he would have to leave or defendant would have to get more business. Plaintiff claims that Mr. Lande used the words, "You are all done." Mr. Lande claims that plaintiff had been asked at different times to work in other selling departments and that plaintiff responded that he didn't want to dirty himself and wasn't hired for that particular purpose, and it is the claim of the defendant that the dispute upon the occasion in question was over plaintiff's refusal to work in other departments or apparently, to work at certain matters requiring attention in the floor-covering department when there was an absence of customers during business hours. During the cross-examination of plaintiff, the following occurred:

"*Q.* In other words, if the employer requested you to do stock work, that is within the terms of the contract, isn't that true?
"*A.* No, sir."

And, further:

"*Q.* In other words, you felt that paragraph 2 didn't mean that Mr. Lande or the employer could tell you to do any type of work in the store, but only certain types of work?
"*A.* That's right."

And, further:

"*Q.* What were some of the things that were discussed?
"*A.* Mr. Lande was very dissatisfied with the terms of the contract as far as I was concerned, and he wanted to dispose of me, as near as I could tell from his conversation.
"*Q.* Did he say that to you?
"*A.* Not those exact words. He told me I would have to leave or we would have to get more business."

Mr. Lande for the defendant testified that plaintiff on the occasion in question didn't give Mr. Lande a chance to do very much talking.

"He ran out, and the first person that he got to was Mrs. Straley."

Part of the dispute in the small office had been over a request of plaintiff for some money on account of a vacation and Mr. Lande testified:

"*Q.* When you told him you wouldn't give him any money, he hollered, 'You fired me'?
"*A.* 'You fired me.' I said, 'I didn't fire you.'
"*Q.* What did you do then?
"*A.* I went out of the room.
"*Q.* Right after him?
"*A.* He got up and went out and the first person he saw was Mrs. Straley, and he said, 'He just fired me.' I said, 'I didn't fire him.' Then he went to Mr. Curry and he said, 'You heard him; he just fired me.' He was up in the carpet department."

Mr. Lande further testified that plaintiff immediately left and did not return to his work in the store of defendant. The following occurred during the testimony of Mr. Lande:

"*Q.* Did Mr. Brooks, prior to this last day, ever talk to you about buying him out?
"*A.* He did previous, about 2 or 3 or 4 weeks, right along in there. He said he was dissatisfied, didn't like the operation, didn't like my method of doing business. That was his attitude. He was arrogant. He wanted his way. Our carpet sales dropped off, and when Mr. Brooks left, our carpet sales started to pick up.
"*Q.* Did you at any time while Mr. Brooks was working at the Flint Furniture Mart tell him in so many words, 'You are fired'?
"*A.* I didn't.
"*Q.* Did you ever indirectly tell him he was fired?
"*A.* I didn't."

Witness Ray L. Neely, called by defendant, was working in defendant's place of business and was in the store when the conversation spoken of heretofore took place, but testified that he did not hear the conversation.

"*Q.* What did you hear?

"*A.* The only thing I heard, when they came out of the office, Brooks said, 'He fired me', and Sam said he didn't.

"*Q.* You mean Brooks was saying, 'He fired me', and Sam—

"*A.* Sam said, 'No, I didn't.' "

Another employee, Arlie Curry, testified that he was standing in the rug department on the day plaintiff left.

"*Q.* Did Mr. Brooks talk to you that day as he left the store?

"*A.* At the time they came out of the office I was standing, if I am not mistaken, in the rug department. Mr. Brooks called me over, and he said, 'Curry, I want you to witness this.' He said, 'Sam just fired me,' and Sam immediately said, 'I didn't.'

"*Q.* Did you hear anything else?

"*A.* No, I didn't."

Mrs. Straley was cashier in the office and testified that she was present on the occasion of the dispute in the office. She testified:

"*Q.* Were you present when they both came out of the office?

"*A.* Yes.

"*Q.* Did either one of them speak to you?

"*A.* Mr. Brooks said, 'Mrs. Straley, I want you to witness this; Sam just fired me,' and Mr. Lande said, 'No, no.' "

The apparent conclusion on the part of the trial judge that Mr. Lande had discharged plaintiff, is against the clear preponderance of the testimony.

The testimony of Mr. Lande was corroborated by 3 witnesses against which is the uncorroborated testimony of plaintiff. Plaintiff shows inferentially by his testimony that he was neglecting some of the duties that were very plainly incumbent upon him by the terms of the contract. At least, it is certain that by his testimony he is stating that certain duties were not required of him by the contract which an examination of the contract plainly shows were required of him. Plaintiff by his own testimony coupled with the positive testimony of Mr. Lande that plaintiff had violated those terms, was plainly guilty of neglect of duty, all of which being considered, plaintiff Brooks had no just reason to complain of the urging upon him by Lande of greater productivity of effort and plaintiff was afforded no cause for quitting his employment.

All the testimony being considered, it seems to us the clear preponderance of the testimony is in favor of the conclusion that while in the small office Mr. Lande was urging vehemently that plaintiff bring about a better sales condition in the floor-covering department, still he did not intend by his urging to be understood as terminating Mr. Brooks' employment.

Plaintiff surely must have understood that Mr. Lande had not "fired" him because of Mr. Lande denying immediately upon the spot plaintiff's statements that Lande had fired him. Our conclusion is that the clear preponderance of the evidence is in favor of the proposition that plaintiff in a fit of anger quit, without being discharged.

The finding of the trial court being against the clear preponderance of the evidence, the judgment appealed from should be set aside. See *Burrell* v. *Scott,* 300 Mich 385, 390. The case is remanded to the trial court with instruction to set aside the judgment entered for the plaintiff and to enter a

judgment for defendant of no cause of action.   Costs to defendant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.